The opinion of the Court was delivered by
Duncan J.
The constitution empowers the governor to appoint a competent number .of justices of the peace, in such convenient districts as are of shall be directed by law. By the constitution of 1776,the state was to be divided into districts for the election of justices, which were to remain until altered by law.
The district of Augusta, under the present constitution, was constituted a district for this purpose by the commissioners of the county in October, 1803; and at November sessions 1803, this district of the county was entered of record. This district included the borough of Sunbury, in which Andrew Albright resided at the time of his appointment, and always continued to reside. By the act of assembly of 22d *276 February, 18C$¡ 3 Sm. L. 490, it is provided, that no justice of the peace shall act as such, unless he shall reside in the district for which he was appointed.
The division of a township would not vacate the commissions of justices of the peace of the district: it is believed J r such never has been the construction of this article of the constitution ; nor has it been the course in such case to issue new commissions. If it were so, the smallest alteration in the boundaries would vacate all appointments. Judicial districts have been changed, counties have been added to and taken from them; yet new commissions have never been issued to the Presidents. The district No. 1 .Augusta, including Sunbury, still remains a district, for this purpose unchanged. Andrew Albright is duly commissioned a justice of the peace for the district including Sunbury, his place of residence. But another objection is made; it appears, that Andrew Albright was commissioned an associate judge of the Court of Common Pleas of Northumberland county on the. 7th September, 1813, and continued to act as such until January last, when he resigned that commission; and it is contended, that the acceptance of this commission vacated his commission as a justice of the peace. The duties of these offices are said to be incompatible, as the Judge maybe called on to give judgment in the Common Pleas, on a judgment rendered by himself as a justice of the peace. It is true, that where the offices are incompatible, the acceptance of the last amounts to a surrender of the first. I wave a pieliminary question, how far on a habeas corpus this can be inquired into, and whether judicial acts by one, de facto a justice, holding and exercising the office, not under mere co-lour of right, but possessing a commission on its face constitutional. and legal, are void ; and whether the Court, where the person claiming to hold office and actually exercising it is not before the Court, cari decide on his right. The natural course would be by information filed, calling on him to shew cause, why he claimed to hold the office, but that would not lie here, as this Court has no original jurisdiction beyond the ,city and' county of Philadelphia; but an action for the false imprisonment would lie against him, in which case the legality of his commission would come in question and meet a regular decision j but waving all these inquiries, the Court have *277 judged it most advisable not to leave the main question in doubt, and now proceed to give their opinion on it.
At the common law, offices subordinate and interfering with each other have been considered incompatible, as where one officer is judicial and the other ministerial, and the ministerial officer is directly subordinate to the judicial. Hence it is, that the Chief Justice of the King’s Bench cannot be prothonotary or clerk of the peace, 4 Inst. 100; nor a forester be a justice in eyre in the same forest, because the forester is under the correction of the justice in eyre, and he cannot judge himself, 3 Inst. 310; but a justice of the Common Pleas, may be baron of the exchequer, 4 Com. Dig. Office. B. 7.; and the Chief Justice of the King’s Bench being made keeper of the great seal, continues Chief Justice. Cro. Car. 600. Sid. 338. Sir Edward Littleton, Chief Justice of the Common Pleas, being appointed lord keeper, continued to act as Chief Justice. Lord Hardwicke for some time .acted both as Chief Justice and Chancellor, and yet the Chancellor sends issue's to be tried in the King’s Bench or Common Pleas; and cases are sent by the Chancellor to these Courts for their opinion; and in cases of great importance he calls to his assistance members both of the King’s Bench and the Common Pleas. So, antecedent to the present constitution, justices of the peace were justices of the Court of Quarter Sessions, from whose decisions appeals lay to that Court, as appeals on orders of removal. So they were generally appointed Judges of the Common Pleas, and yet as justices they had civil jurisdiction from the exercise of .which appeals lay to the Common Pleas. Under the constitution of 1776, justices of the peace were elected by the freeholders of the district, and commissioned by the executive council; but the appointment of Judges of the Common Pleas was by the council alone. A Judge of the Common Pleas was not necessarily to be taken from the justices .elected by the freeholders ; yet generally they were. One instance occurs to the recollection of the Court, though there may be many others, where this was not the case ; the late Chief Justice of this Court was appointed President of the Common Pleas of the city and county of Philadelphia, and he never had been elected a justice of the peace. These justices of the peace were members of a Court who decided on appeals *278 from justices of the peace. Here was the same incompatibility, if incompatibility it be, as in this case.
By the present constitution, the judicial power is vested in ^ gupreme Court, in Courts of Oyer and Terminer and General Gaol Delivery, Common Pleas, Orphan’s Court, Register’s Courts, and Courts of Quarter Sessions, and such other Courts as the legislature might from time to time establish. The Courts were organised by act of 13th April, 1791. The Judges of the Supreme Court, the Presidents of the Courts of Common Pleas, &c. were constituted Judges of the High Court of Errors and Appeals. It is true, that such of these Judges and Presidents as had given judgments in any cause were excluded from sitting in judgment in that cause; but in causes decided by the associate judges of the Common Pleas, where the President did not sit in judgment, his voice as a member of the High Court of Errors and Appeals might reverse the judgment of the Supreme Court, reversing the judgment of that Court of which he was President, and thus affirm the judgment of his own Court.
It is not for this Court to decide on the propriety of such appointments, or the inconvenience ; the inquiry is confined to incompatibility, created by the constitution or by some law. These appointments do not appear to this Court to be inhe-. rently incompatible at common law. Nor are they repugnant to the provisions of the constitution or any act of assembly. If evils arise from this union of commissions in the same person, this Court has not the power to remove the evil; the power resides elsewhere.
Prisoner remanded.