**[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | |
|---|---|
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 37 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1596<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : Order of the Delaware County Court<br>: of Common Pleas, Civil Division, at<br>: No. 2016-010839 Dated October 11,<br>: 2019 and entered on October 15,<br>: 2019<br>:<br>: ARGUED:  March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC  FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 38 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1597<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : Order of the Delaware County Court<br>: of Common Pleas, Civil Division, at<br>: No. 2016-010841 dated October 11,<br>: 2019 and exited on October 15,<br>: 2019<br>:<br>ARGUED:  March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC  FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 39 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1598<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the<br>: Order of the Delaware County Court |

| | | |
|---|---|---|
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : | of Common Pleas, Civil Division, at No. 2016-010843 dated October 11, 2019 and exited on October 15, 2019 |
| | : | |
| | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 40 MAP 2023 |
| | : | Appeal from the Order of the Commonwealth Court at No. 1599 CD 2019 entered on September 28, 2022 Vacating and Remanding the Order of the Delaware County Court |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : | of Common Pleas, Civil Division, at No. 2016-010847 dated October 11, 2019 exited on October 15, 2019 |
| | : | |
| | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 41 MAP 2023 |
| | : | Appeal from the Order of the Commonwealth Court at No. 1600 CD 2019 entered on September 28, 2022 Vacating and Remanding the Order of the Delaware County Court |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : | of Common Pleas, Civil Division, at No. 2016-010848 dated October 11, 2019 and exited on October 15, 2019 |
| | : | |
| | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 42 MAP 2023 |
| | : | Appeal from the Order of the Commonwealth Court at No. 1601 CD 2019 entered on September 28, 2022 Vacating and Remanding the Order of the Delaware County Court |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : | of Common Pleas, Civil Division, at No. 2016-010849 dated October 11, |

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 2

| | |
|---|---|
| | : 2019 and exited on October 15, : 2019 : : ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA<br><br>APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 43 MAP 2023 : : Appeal from the Order of the : Commonwealth Court at No. 1602 : CD 2019 entered on September 28, : 2022 Vacating and Remanding the : Order of the Delaware County Court : of Common Pleas, Civil Division, at : No. 2016-010850 dated October 11, : 2019 and exited on October 15, : 2019 : : ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA<br><br>APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 44 MAP 2023 : : Appeal from the Order of the : Commonwealth Court at No. 1603 : CD 2019 entered on September 28, : 2022 Vacating and Remanding the : Order of the Delaware County Court : of Common Pleas, Civil Division, at : Nos. 2016-010851 and Consolidated : w/ 2016-010884 dated October 11, : 2019 and exited on October 15, : 2019 : : ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA<br><br>APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 45 MAP 2023 : : Appeal from the Order of the : Commonwealth Court at No. 1604 : CD 2019 entered on September 28, : 2022 Vacating and Remanding the : Order of the Delaware County Court : of Common Pleas, Civil Division, at : No. CV 2016-010852 dated October |

|  |  |
|---|---|
|  | : 11, 2019 and exited on October 15, |
|  | : 2019 |
|  | : |
|  | : ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 46 MAP 2023 |
|  | : |
|  | : Appeal from the Order of the |
|  | : Commonwealth Court at No. 1605 |
|  | : CD 2019 entered on September 28, |
|  | : 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : Order of the Delaware County Court |
|  | : of Common Pleas, Civil Division, at |
|  | : No. 2016-010853 dated October 11, |
|  | : 2019 and exited on October 15, |
|  | : 2019 |
|  | : |
|  | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 47 MAP 2023 |
|  | : |
|  | : Appeal from the Order of the |
|  | : Commonwealth Court at No. 1606 |
|  | : CD 2019 entered on September 28, |
|  | : 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : Order of the Delaware County Court |
|  | : of Common Pleas, Civil Division, at |
|  | : No. 2016-010854 dated October 11, |
|  | : 2019 and exited on October 15, |
|  | : 2019 |
|  | : |
|  | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 48 MAP 2023 |
|  | : |
|  | : Appeal from the Order of the |
|  | : Commonwealth Court at No. 1607 |
|  | : CD 2019 entered on September 28, |
|  | : 2022 vacating and remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : Order of the Delaware County Court |
|  | : of Common Pleas, Civil Division, at |
|  | : No. 2016-010856 dated October 11, |
|  | : |

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 4

|  |  |  |
|---|---|---|
|  | : | 2019 and exited on October 15, 2019 |
|  | : |  |
|  | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 49 MAP 2023 |
|  | : |  |
|  | : | Appeal from the Order of the Commonwealth Court at No. 1608 CD 2019 entered on September 28, 2022 Vacating and Remanding the Order of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010857 dated October 11, 2019 and exited on October 15, 2019 |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : |  |
|  | : |  |
|  | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 50 MAP 2023 |
|  | : |  |
|  | : | Appeal from the Order of the Commonwealth Court at No. 1609 CD 2019 entered on September 28, 2022 Vacating and Remanding the Order of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010858 dated October 11, 2019 and exited on October 15, 2019 |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : |  |
|  | : |  |
|  | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 51 MAP 2023 |
|  | : |  |
|  | : | Appeal from the Order of the Commonwealth Court at No. 1610 CD 2019 entered on September 28, 2022, Vacating and Remanding the Order of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010859 dated October 11, |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : |  |
|  | : |  |

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 5

|  |  |
|---|---|
|  | : 2019 and exited on October 15, 2019 |
|  | |
|  | ARGUED:  March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC  FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 52 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1611<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : Order of the Delaware County Court<br>: of Common Pleas, Civil Division, at<br>: No. 2016-010860 dated October 11,<br>: 2019 and exited on October 15,<br>: 2019<br>:<br> ARGUED:  March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC  FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 53 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1612<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : Order of the Delaware County Court<br>: of Common Pleas, Civil Division, at<br>: No. 2016-010862 dated October 11,<br>: 2019 and exited on October 15,<br>: 2019<br>:<br> ARGUED:  March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC  FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : No. 54 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1613<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : Order of the Delaware County Court<br>: of Common Pleas, Civil Division, at<br>: No. 2016-010863 dated October 11,<br>: |

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 6

|  | : | 2019 and exited on October 15, 2019 |
|  | : |  |
|  | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 55 MAP 2023 |
|  | : |  |
|  | : | Appeal from the Order of the Commonwealth Court at No. 1614 CD 2019 entered on September 28, 2022 Vacating and Remanding the Order of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010865 dated October 11, 2019 and exited on October 15, 2019 |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : |  |
|  | : |  |
|  | : |  |
|  | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 56 MAP 2023 |
|  | : |  |
|  | : | Appeal from the Order of the Commonwealth Court at No. 1615 CD 2019 entered on September 28, 2022 Vacating and Remanding the Decision of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010868 dated October 11, 2019 and exited on October 15, 2019 |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : |  |
|  | : |  |
|  | : |  |
|  | : | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 57 MAP 2023 |
|  | : |  |
|  | : | Appeal from the Order of the Commonwealth Court at No. 1616 CD 2019 entered on September 28, 2022 Vacating and Remanding the Order of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010869 dated October 11, |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : |  |
|  | : |  |

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 7

|  |  |
|---|---|
|  | : 2019 and exited on October 15, |
|  | : 2019 |
|  | : |
|  | : ARGUED: March 5, 2024 |

| | |
|---|---|
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA<br><br>APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 58 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1617<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the<br>: Order of the Delaware County Court<br>: of Common Pleas, Civil Division, at<br>: No. 2016-010871 dated October 11,<br>: 2019 and exited on October 15,<br>: 2019<br>:<br>: ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA<br><br>APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 59 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1618<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the<br>: Order of the Delaware County Court<br>: of Common Pleas, Civil Division, at<br>: No. 2016-010873 dated October 11,<br>: 2019 and exited on October 15,<br>: 2019<br>:<br>: ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA<br><br>APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 60 MAP 2023<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1619<br>: CD 2019 entered on September 28,<br>: 2022 Vacating and Remanding the<br>: Order of the Delaware County Court<br>: of Common Pleas, Civil Division, at<br>: No. 2016-010874 dated October 11,<br>: |

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 8

|  |  |
|---|---|
|  | : 2019 and exited on October 15, : 2019 |
|  | ARGUED:  March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC  FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA <br><br><br> APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 61 MAP 2023 <br> : <br> : Appeal from the Order of the <br> : Commonwealth Court at No. 1620 <br> : CD 2019 entered on September 28, <br> : 2022 Vacating and Remanding the <br> : Order of the Delaware County Court <br> : of Common Pleas, Civil Division, at <br> : No. 2016-010883 dated October 11, <br> : 2019 and exited on October 15, <br> : 2019 <br> : <br> ARGUED:  March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC  FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA <br><br><br> APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 62 MAP 2023 <br> : <br> : Appeal from the Order of the <br> : Commonwealth Court at No. 1621 <br> : CD 2019 entered on September 28, <br> : 2022 Vacating and Remanding the <br> : Order of the Delaware County Court <br> : of Common Pleas, Civil Division, at <br> : No. 2016-010884 dated October 11, <br> : 2019 and exited on October 15, <br> : 2019 <br> : <br> ARGUED:  March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC  FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA <br><br><br> APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : No. 63 MAP 2023 <br> : <br> : Appeal from the Order of the <br> : Commonwealth Court at No. 1622 <br> : CD 2019 entered on September 28, <br> : 2022 Vacating and Remanding the <br> : Order of the Delaware County Court <br> : of Common Pleas, Civil Division, at <br> : No. 2016-010885 dated October 11, <br> : |

| | | |
|---|---|---|
| | : | 2019 and exited on October 15, |
| | : | 2019 |
| | | |
| | | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 64 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1623 |
| | : | CD 2019 entered on September 28, |
| | : | 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : | Order of the Delaware County Court |
| | : | of Common Pleas, Civil Division, at |
| | : | No. 2016-010887 dated October 11, |
| | : | 2019 and exited on October 15, |
| | : | 2019 |
| | : | |
| | | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 65 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1624 |
| | : | CD 2019 entered on September 28, |
| | : | 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : | Order of the Delaware County Court |
| | : | of Common Pleas, Civil Division, at |
| | : | No. 2016-010893 dated October 11, |
| | : | 2019 and exited on October 15, |
| | : | 2019 |
| | : | |
| | | ARGUED: March 5, 2024 |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : | No. 66 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1625 |
| | : | CD 2019 entered on September 28, |
| | : | 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : | Order of the Delaware County Court |
| | : | of Common Pleas, Civil Division, at |
| | : | No. 2016-010894 dated October 11, |
| | : | |

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 10

| | | |
|---|---|---|
| | : | 2019 and exited on October 15, |
| | : | 2019 |
| | : | |
| | : | ARGUED: March 5, 2024 |
| | | |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : : : | No. 67 MAP 2023<br><br>Appeal from the Order of the Commonwealth Court at No. 1626 CD 2019 entered on September 28, 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : : : : : : : | Decision of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010897 dated October 11, 2019 and exited on October 15, 2019 |
| | : : | ARGUED: March 5, 2024 |
| | | |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : : : : : : | No. 68 MAP 2023<br><br>Appeal from the Order of the Commonwealth Court at No. 1627 CD 2019 entered on September 28, 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : : : : : : | Order of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010903 dated October 11, 2019 and exited on October 15, 2019 |
| | : : | ARGUED: March 5, 2024 |
| | | |
| IN RE: APPEAL OF PROSPECT CROZER LLC FROM THE DECISION OF THE BOARD OF ASSESSMENT APPEALS OF DELAWARE COUNTY, PA | : : : : : : | No. 69 MAP 2023<br><br>Appeal from the Order of the Commonwealth Court at No. 1628 CD 2019 entered on September 28, 2022 Vacating and Remanding the |
| APPEAL OF: CHESTER UPLAND SCHOOL DISTRICT | : : : : | Order of the Delaware County Court of Common Pleas, Civil Division, at No. 2016-010913 dated October 11, |

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 11

IN RE: APPEAL OF PROSPECT CROZER : No. 70 MAP 2023
LLC FROM THE DECISION OF THE :
BOARD OF ASSESSMENT APPEALS OF : Appeal from the Order of the
DELAWARE COUNTY, PA : Commonwealth Court at No. 1629
: CD 2019 entered on September 28,
: 2022 Vacating and Remanding the
APPEAL OF: CHESTER UPLAND : Order of the Delaware County Court
SCHOOL DISTRICT : of Common Pleas, Civil Division, at
: No. 2016-010915 dated October 11,
: 2019 and exited on October 15,
: 2019
:
ARGUED: March 5, 2024

**OPINION**

**JUSTICE DONOHUE** **DECIDED: December 17, 2024**

This appeal challenges the Commonwealth Court's determination, in a precedential decision, that a senior judge serving by assignment on the Common Pleas Court of Delaware County to hear tax appeals violated Article V, Section 17(a) ("Section 17(a)") of the Pennsylvania Constitution[1] by contemporaneously holding a compensated

---

[1] The Pennsylvania Constitution provides, in relevant part, the following:

§ 17. Prohibited Activities

(a) Justices and judges shall devote full time to their judicial duties, and shall not engage in the practice of law, hold office in a political party or political organization, or hold an office or position of profit in the government of the United States, the Commonwealth or any municipal corporation

(continued…)

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 12

position on a government board in Philadelphia. As a result of the violation, the Commonwealth Court found that the judge forfeited his judicial office such that the orders entered in the tax assessment matters were legal nullities. The Commonwealth Court vacated the orders and remanded for proceedings before a new judge with specific instructions. For the reasons discussed in this opinion, the Commonwealth Court erred in concluding that a Section 17(a) violation results in the automatic forfeiture of judicial office. Instead, we conclude, in a challenge to the adjudication of a judge, the simultaneous holding of the judicial office and the position of profit prohibited in Section 17(a) resulted in a constitutionally impermissible conflict of duties, and the orders entered in the tax appeals must be vacated. The proceedings are remanded to the Court of Common Pleas of Delaware County for reassignment with special instructions. Accordingly, we affirm the order of the Commonwealth Court on an alternative basis.

## I. Background

The underlying matters involve tax assessment appeals for several parcels of real property owned by Prospect Crozer, LLC ("Prospect"). On July 1, 2016, Prospect purchased and developed 57.7 acres of real property located in Upland Borough, Delaware County ("Property"), which was assessed for tax purposes as thirty-four separate parcels. For tax years 2017 through 2019, the Delaware County Assessment Office assessed the Property at a value of $80,166,493. Prospect appealed the assessment, but the Delaware County Board of Assessment Appeals denied the appeal.

---

or political subdivision thereof, except in the armed service of the United States or the Commonwealth.

PA. CONST. art. V, § 17(a).

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 13

When Prospect appealed to the Delaware County Court of Common Pleas, the Chester Upland School District ("District") intervened.

From September 25, 2018 through June 25, 2019, the Honorable John L. Braxton—a visiting Senior Judge assigned by this Court as a conflict judge following the full court recusal of the Delaware County Court of Common Pleas' Board of Judges—presided over the de novo tax assessment proceedings.[2] On May 19, 2019, Judge Braxton was appointed to the Philadelphia Board of Revision of Taxes ("Board"). Declaration of City of Philadelphia Department of Human Resources, 4/19/2022. On June 24, 2019, while Judge Braxton was presiding over the tax assessment appeals, he informed the parties that the proceedings would have to be completed "as early as possible in the month of July" because he was retiring from judicial service due to his election to the Board. N.T., 6/24/2019, at 215-16, 219. On October 11, 2019, Judge Braxton submitted a five-page adjudication, concluding that the fair market value of the Property was $74 million for tax years 2017 through 2019. Prospect filed a timely appeal to the Commonwealth Court in November of 2019.

In December 2019, counsel for Prospect observed Braxton's name on a nameplate in the Board's hearing room. In January 2020, an unaffiliated attorney advised Prospect's

---

[2] The proceedings involved four sets of consolidated cases concerning the valuation of the Property. The evidence presented to the trial court to demonstrate the value of the Property was extensive. While the merits of the adjudications of the assessments were presented on appeal before the Commonwealth Court and submitted to this Court in a Petition for Allowance of Appeal, we limited our review to the constitutional question concerning Article V, Section 17 of the Pennsylvania Constitution and its impact on the orders issued in the instant matter. *See In re Prospect Crozer, LLC*, 298 A.3d 1131 (Pa. 2023) (per curiam). Accordingly, given our disposition, we leave the merits adjudication for the trial court in accordance with the Commonwealth Court's order.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 14

counsel that she observed Braxton participating in Board proceedings the previous fall. Animated by these discoveries, counsel for Prospect undertook an investigation to determine the exact day Judge Braxton began working as a member of the Board, which culminated in a request pursuant to the Right to Know Law ("RTKL") seeking information about salary payments to Judge Braxton.[3]  The RTKL response revealed that Judge Braxton received his first payment from the Board on June 16, 2019 prior to issuing the October 2019 orders in its case.  Accordingly, Prospect filed an application to vacate the orders on appeal in the Commonwealth Court.  Prospect argued that Judge Braxton held incompatible offices in violation of Article V, Section 17(a) of the Pennsylvania Constitution, resulting in the forfeiture of the first-held office, i.e., his judicial office.  This, it argued, amounted to a structural error, entitling it to new adjudications in each case.  In response, the District argued that Prospect's application to vacate was untimely and that this Court had approved Judge Braxton's completion of his assignment on these tax assessment proceedings following his appointment to the Board.

The Commonwealth Court deferred resolution of Prospect's application to vacate to the merits panel, which, after argument, remanded to the trial court for the development of an evidentiary record to answer three questions:

> (1) The date on which Judge Braxton assumed his position on the Board and began receiving compensation therefor;
>
> (2) Whether Judge Braxton's continued work on the [] assessment appeals of Prospect while simultaneously serving on the Board was approved in writing or in some other way by the Pennsylvania Supreme Court; and

---

[3] The RTKL response was filed in June 2020.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 15

(3) The date on which Prospect learned that when Judge Braxton issued the orders in the above-captioned appeals, he had already assumed his position with the Board.

Commonwealth Court Order, 1596-1629 CD 2019, 3/17/2022. On April 20, 2022, the Delaware County Court of Common Pleas conducted a hearing to answer those questions.

At the hearing, Prospect provided affidavits detailing how it learned of Judge's Braxton's dual service. Prospect also submitted a "Certification of Records Review" from the former Court Administrator of Pennsylvania, Geoff Moulton, which provided as follows:

> After an examination by the Administrative Office of Pennsylvania Courts ("AOPC") of its records pertaining to the time period from 2017 through 2020, as well as an examination of the records of the Prothonotary of the Supreme Court of Pennsylvania, I hereby certify there is no record of entry of an order, decision, or other determination of the Supreme Court of Pennsylvania, the Chief Justice, or any other justice, or AOPC approving simultaneous service by the Honorable John L. Braxton on the Philadelphia Board of Revision of Taxes and as a senior judge within Pennsylvania's Unified Judicial System. Any such record or entry would be in my custody as Court Administrator of Pennsylvania.

N.T., 4/20/2022, at 29. The District offered Braxton's testimony, regarding when he was elected to the Board; when he was assigned to the instant tax assessment proceedings; and when he informed the parties of his impending retirement from judicial service. N.T., 4/20/2022, at 63. Although he testified that he did not "know the actual date" that he began sitting on the Board, *id.*, he did acknowledge that he received his first payment from the Board on June 16, 2019, *id.* at 84. According to Judge Braxton, he advised Joe Mittleman, then-Director of Judicial District Operations for AOPC, that he had been

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 16

appointed to the Board and discussed with him how he should proceed with the tax assessment appeals as well as other matters to which he had been assigned in other counties. *Id.* at 65. Judge Braxton understood that he had been provided authority to complete his remaining judicial caseload despite his appointment to the Board. *Id.* at 70-71. All of Judge Braxton's communications with AOPC were oral, not written. *Id.* at 66.

Following the hearing, on May 4, 2022, the trial court issued a report on the factual questions set forth in the Commonwealth Court's March 17 order. With respect to the date on which Judge Braxton assumed the position, the trial court identified May 19, 2019 as his date of appointment. As for compensation, it noted that the parties stipulated that he received his first pay from the Board on June 16, 2019. Further, the trial court credited Judge Braxton's testimony that he began hearing cases as a member of the Board sometime in the fall of 2019. Trial Court's Report, 5/4/2022, at 3.

Regarding, the second question, i.e., whether Judge Braxton's simultaneous service as a senior judge and position on the Board was approved by this Court, the trial court credited the former Court Administrator of Pennsylvania's statement that no record existed from this Court that approved of this simultaneous service. *Id.* at 4. However, the trial court also credited Judge Braxton's testimony that he informed Mittleman of his appointment to the Board.[4] *Id.* Lastly, regarding the date that Prospect learned about

---

[4] During the hearing, the trial court sustained Prospect's hearsay objections concerning testimony about Mittleman's statements to Judge Braxton in response to a purported conversation regarding Judge Braxton's appointment to the Board. N.T., 4/20/2022, at 67. After the hearing, Prospect sought to submit supplemental findings that would introduce an affidavit from Mittleman, refuting Judge Braxton's characterization of their conversations; however, the trial court precluded its introduction given that the record had already been closed. Trial Court Order, 5/4/2022, at 2.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 17

Judge Braxton's simultaneous service, the trial court explained that Judge Braxton had informed the parties that he was "going to be sitting" on the Board after finishing his judicial assignments. *Id.* at 5-6. It also credited the affidavits provided by Prospect that demonstrated Judge Braxton began hearing cases for the Board in the fall of 2019. *Id.* at 6.

The trial court transmitted its findings to the Commonwealth Court which granted Prospect's application to vacate. *See In re Prospect Crozer, LLC*, 283 A.3d 428 (Pa. Commw. 2022). In its opinion, the court began with an analysis of Section 17(a). In construing its language, the court focused on the prohibition the Constitution imposes against judges holding "an office or position of profit in the government of the United States, the Commonwealth or any municipal corporation or political subdivision thereof[.]" *Id.* at 441 (quoting PA. CONST. art. V, § 17(a)). It noted that an "office of profit" is one "that pays compensation to the office holder." *Id.* at 442. Reasoning that the Board is a municipal corporation or political subdivision of the Commonwealth, and members of the Board receive compensation, the court determined that a member of the Board holds a "position of profit." *Id.* at 442-43. Relying on case law cited by Prospect, the Commonwealth Court opined that when someone holds incompatible offices, "the acceptance of the second ipso facto vacates the first." *Id.* at 443 (citing *Fauci v. Lee*, 237 N.Y.S.2d 469, 473 (N.Y. Sup. Ct. 1963); *Commonwealth ex rel. Crow v. Smith*, 23 A.2d 440, 442 n.3 (Pa. 1942); *DeTurk v. Commonwealth*, 129 Pa. 151, 160 (1889); *Opinion of the Justices*, 647 A.2d 1104, 1105 (Del. 1994); *Stubbs v. Lee*, 64 Me. 195, 198 (1874); *Scott v. Strobach*, 49 Ala. 477, 485 (1873)). By violating Section 17(a), the Commonwealth Court found, Judge Braxton "forfeited his judicial office." *Id.* Accordingly,

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 18

the court held that it was structural error[5] for Judge Braxton to issue the adjudications in the underlying tax assessment proceedings while serving on the Board because "[l]itigants have a right to have decisions made by a judge validly holding his office." *Id.* Further, it noted that structural error cannot be subject to waiver, likening it to the principle that parties cannot agree to confer subject matter jurisdiction on a court where it does not exist. *Id.* The court recognized that while such incompatible service may also implicate the Code of Judicial Conduct, that possibility does not divest the court of authority to consider "how a judge's incompatible service affects the constitutionality of a trial." *Id.* at 443-44. It reasoned that it was "required to examine the limits imposed by any constitutional provision, and if there is a violation, grant appropriate relief." *Id.* at 444.

Following these conclusions, the court addressed the District's arguments, rejecting each in turn. *Id.* at 444-47. Notably, it rejected the argument that Section 17(a) does not apply to senior judges, reasoning that Section 17(a) does not identify a particular judicial office holder—e.g., judge, justice or magisterial district judge—but speaks of "judicial duties," which senior judges perform. *Id.* Further, the court found no merit to the District's argument that it was permissible for Judge Braxton to hold both positions because the Rules of Judicial Administration, Pa.R.J.A. 701-706, govern the conduct of senior judges and those Rules do not prohibit senior judges from extra-judicial employment. The court reasoned that the Rules of Judicial Administration cannot override a constitutional provision and that they must be read in light of the explicit constitutional prohibition contained in Section 17(a). *Id.* at 445. It also rejected the

---

[5] This Court has defined "structural error" to be "a constitutional violation that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself[.]" *Commonwealth v. Baroni*, 827 A.2d 419, 420 (Pa. 2003).

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 19

District's efforts to establish waiver of the constitutional challenge on the basis that Prospect did not raise it until after Judge Braxton handed down decisions unfavorable to it. The District complained that Prospect knew of the Board appointment no later than June 2019 and therefore that Prospect was required to seek Judge Braxton's recusal at that time in order to preserve the claim. Further, the District argued that to seek disqualification after a judgment is entered, the requesting party must prove that it acted with due diligence. *Id.* at 446. The Commonwealth Court recognized that Prospect admitted that it first learned of the **appointment** in June 2019, but concluded that Prospect proved that it did not know that Judge Braxton had begun serving his appointment while still acting as a judicial officer until after its investigative measures, thus establishing that Prospect acted with due diligence. *Id.* at 446-47. The court also explained that the cases upon which the District relied involved motions to disqualify, whereas Prospect filed an application to vacate the orders issued by a jurist allegedly without authority to act. *Id.* at 447.

The court concluded that Judge Braxton "forfeited his judicial office by June 16, 2019," which is when he began to receive compensation for his position on the Board. It found that the thirty-four orders at issue in the appeal were legal nullities, granted Prospect's application and vacated the orders. *Id.*

The Commonwealth Court then performed a merits review of Prospect's claim that the trial court erred by failing to provide an explanation of the reasons for its valuations as required by law. In so doing, the court concluded that the trial court did err[6] and

---

[6] Given its conclusion that the orders were nullities, it is unclear why the Commonwealth Court undertook a review of the merits underlying the orders.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 20

instructed that the trial court, on remand, must explain the basis for its valuation and how it resolved the conflict between the experts' opinions and methodologies. *Id.* at 449. Ultimately, the court remanded for a decision by a new jurist, who, the court explained, "may supplement the record if deemed appropriate but may not supplant the existing record." *Id.* at 449-50.

The District filed a petition for allowance of appeal, which we granted in part to address the following issue:

> Whether the Commonwealth Court erred by finding that a judicial officer has violated [PA. CONST.], art. V, § 17, concluding that such violation resulted in the automatic forfeiture of judicial office, and determining that such violation constitutes a structural error which renders the trial court's orders void ab initio?

*In re Prospect Crozer, LLC*, 298 A.3d 1131 (Pa. 2023) (per curiam).

## II.    Parties' Arguments

## The District's Arguments

The District advances two main arguments. Its first and principal challenge is that the Commonwealth Court lacked the authority to address whether a violation of Section 17(a) occurred because authority to make such a determination resides in constitutionally designed entities (i.e., the Judicial Conduct Board and Court of Judicial Discipline) and ultimately, this Court. In the alternative, if the Commonwealth Court is empowered to make that determination, the District argues that the court incorrectly concluded that Judge Braxton violated Section 17(a) and that it still lacked the authority to remove him from judicial office.

In setting forth its principal argument, the District argues that Article V, Section 18 ("Section 18") of the Pennsylvania Constitution exclusively governs the resolution of

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 21

alleged Section 17 violations by virtue of the Judicial Conduct Board, the Court of Judicial

Discipline, and disciplinary procedures for members of the judiciary.[7]  The District argues

------

[7]  Section 18 provides, in relevant part:

**§ 18. Suspension, removal, discipline, and other sanctions**

    (a) There shall be an independent board within the Judicial Branch, known as the Judicial Conduct Board, the composition, powers and duties of which shall be as follows:

*    *    *

        (7) The board shall receive and investigate complaints regarding judicial conduct filed by individuals or initiated by the board; issue subpoenas to compel testimony under oath of witnesses, including the subject of the investigation, and to compel the production of documents, books, accounts and other records relevant to the investigation; determine whether there is probable cause to file formal charges against a justice, judge or justice of the peace for conduct proscribed by this section; and present the case in support of the charges before the Court of Judicial Discipline.

*    *    *

    (b) There shall be a Court of Judicial Discipline, the composition, powers and duties of which shall be as follows:

*    *    *

        (5) Upon the filing of formal charges with the court by the board, the court shall promptly schedule a hearing or hearings to determine whether a sanction should be imposed against a justice, judge or justice of the peace pursuant to the provisions of this section. The court shall be a court of record, with all the attendant duties and powers appropriate to its function. Formal charges filed with the court shall be a matter of public record. All hearings conducted by the court shall be public proceedings conducted pursuant to the rules adopted by

(continued…)

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 22

the court and in accordance with the principles of due process and the law of evidence. Parties appearing before the court shall have a right to discovery pursuant to the rules adopted by the court and shall have the right to subpoena witnesses and to compel the production of documents, books, accounts and other records as relevant. The subject of the charges shall be presumed innocent in any proceeding before the court, and the board shall have the burden of proving the charges by clear and convincing evidence. All decisions of the court shall be in writing and shall contain findings of fact and conclusions of law. A decision of the court may order removal from office, suspension, censure or other discipline as authorized by this section and as warranted by the record.

\*       \*       \*

(c) Decisions of the court shall be subject to review as follows:

(1) A justice, judge or justice of the peace shall have the right to appeal a final adverse order of discipline of the court. A judge or justice of the peace shall have the right to appeal to the Supreme Court in a manner consistent with rules adopted by the Supreme Court … .

\*       \*       \*

(3) An order of the court which dismisses a complaint against a judge or justice of the peace may be appealed by the board to the Supreme Court, but the appeal shall be limited to questions of law … .

\*       \*       \*

(d) A justice, judge or justice of the peace shall be subject to disciplinary action pursuant to this section as follows:

(1) A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for … violation of [S]ection 17 of this article; misconduct in office; neglect or failure to perform the duties of office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct

(continued…)

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 23

that pursuant to Section 18, only the Judicial Conduct Board may investigate alleged Section 17 violations and only the Court of Judicial Discipline may determine if the violation occurred, upon a finding based on clear and convincing evidence. District's Brief at 23. The District complains that the Commonwealth Court unconstitutionally usurped the roles of both the Judicial Conduct Board and the Court of Judicial Discipline when it used the trial court (by virtue of the remand inquiries) to investigate and then render a decision on the alleged Section 17 violation. The District notes that in connection with its determination, the Commonwealth Court did not apply the required clear and convincing evidentiary standard. *Id.* at 24-25 (citing PA. CONST. art. 5, § 18(b)(5)). To the District, allowing the Commonwealth Court to assess Section 17(a) violations would destabilize the legal system by "expos[ing] litigants to uncertainty of final orders by duly authorized judges."[8] *Id.* at 27.

In its alternative argument, the District contends that, even if the Commonwealth Court had the authority to declare that Judge Braxton violated Section 17(a), it was without authority to declare that Judge Braxton forfeited his judicial office by committing

---

occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court … [.]

PA. CONST. art. V, §§ 18(a), (a)(7), (b), (b)(5), (c)(1)-(4), (d)(1).

[8] Although not set forth in a separate argument section of its brief, the District asserts that this Court's decision in *Reilly by Reilly v. SEPTA*, 489 A.2d 1291, 1299 (Pa. 1985) stands for the proposition that it is this Court's exclusive right to supervise the conduct of all judges, putting the enforcement of such conduct "beyond the jurisdiction of the intermediate appellate courts." District's Brief at 10. Given that the District views the Commonwealth Court's decision as establishing a new standard of review and procedure for addressing judicial misconduct, it argues that the Commonwealth Court intruded upon this Court's authority. *Id.* at 10-11.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 24

that violation.  It argues that only the Court of Judicial Discipline has the ability to impose such a sanction following the completion of disciplinary proceedings pursuant to Section 18.  *Id.* at 28-29.  The District attempts to distinguish two cases upon which the Commonwealth Court relied: *Commonwealth v. Conyngham*, 65 Pa. 76 (1870), and *Simmons v. Tucker*, 281 A.2d 902 (Pa. 1971).  To the District, these cases only resolved that one person cannot hold two full-time judicial positions.  *Id.* at 29-31.  It emphasizes that Judge Braxton did not hold even one full-time judicial office, suggesting that his status as a "part-time" senior judge removes him from the purview of cases like *Conyngham* and *Simmons.  Id.* at 29-30.

On the Commonwealth Court's conclusion that the violation of Section 17(a) resulted in a non-waivable structural error, the District argues that Prospect has not been deprived of a constitutional right that would amount to a defect affecting the framework of the trial.  *Id.* at 32-33.  It offers a list of irregularities that have been deemed to be structural error by the United States Supreme Court and emphasizes that none are present here. *Id.* at 33-34.

The District urges this Court to consider "the impact of Prospect's delay in raising its objection well after it was aware of Judge Braxton's service on the [Board]."  *Id.* at 35. It faults Prospect for failing to raise its concerns at any time in the intervening eight months between the June 24, 2019 hearing when Prospect knew Judge Braxton was appointed to the Board and March 6, 2020, when it filed its application to vacate.  It cites the axiomatic principle that a party may not raise an issue for the first time on appeal.  *Id.* at 36-37.  The District equates Prospect's application to vacate Judge Braxton's orders to a motion seeking the disqualification or recusal of a jurist as presented in *Lomas v. Kravitz*,

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 25

170 A.3d 380, 390 (Pa. 2017), in which this Court held that a party seeking recusal or disqualification must do so "at the earliest possible moment." *Id.* at 38. In *Kravitz*, we recognized that granting a post-trial motion for recusal would have the effect of nullifying the prior proceedings and that by not raising the issue sooner, the moving party contributed to the expenditure of additional time and money that might otherwise have been avoided. The District complains that Prospect has done the same here, suggesting that this should be enough to find not only that this issue is waivable, but that it was in fact waived here.

Lastly, the District argues that the Commonwealth Court erred by relying on Mittleman's affidavit offered by Prospect to rebut Judge Braxton's testimony that Mittleman told him that he could complete his judicial assignments following his appointment to the Board. It argues that the affidavit was classic hearsay not subject to any exception, and further that Pennsylvania does not permit the use of after-discovered evidence for impeachment purposes, and reliance on such evidence amounts to an improper reweighing of evidence or rejection of the trial court's factual findings and credibility determinations.[9] *Id.* at 40-45.

---

[9] To the extent the District seeks to challenge the Commonwealth Court's supposed reliance on the Mittleman affidavit that the trial court rejected, we see no reason to give this claim much credence. The Commonwealth Court's only references to the affidavit were in the context of the procedural history of this case, *Prospect Crozer*, 283 A.3d at 440, but at no point does it appear that the court relied on this affidavit in arriving at its ultimate conclusion. It notes that Judge Braxton's testimony about Mittleman's statements was "irrelevant" to its determination because "the AOPC cannot waive the Pennsylvania Constitution." *Id.* at 445. This rationale would logically extend to any statement actually attributed to Mittleman. The Commonwealth Court's analysis in this respect focused upon the impossibility of waiving constitutional obligations, not whether or not AOPC approved of Judge Braxton's dual service.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 26

**Prospect's Arguments**

Prospect rejects the District's insistence that this is a matter of judicial misconduct reserved for the Judicial Conduct Board and Court of Judicial Discipline. To Prospect, "[t]his appeal is about the validity of former Judge Braxton's order, not whether he is personally culpable for a violation of the Rules of Judicial Conduct." Prospect's Brief at 27. It contends that this proceeding is much like appellate review of a trial court's denial of a recusal request, which can also involve a judge's conduct. Further, Prospect explains that neither the Judicial Conduct Board nor the Court of Judicial Discipline have appellate jurisdiction to review a trial court order. Appellate review of a trial court order allegedly tainted by prohibited judicial conduct necessarily falls to the intermediate appellate courts. *Id.* at 28. Prospect warns that the position advanced by the District threatens to immunize trial court decisions from appellate review if the alleged error implicates a violation of the Code of Judicial Conduct or Article V provisions. *Id.* at 28-29. Prospect challenges the District's reliance on *Reilly*, explaining that the error this Court corrected in *Reilly* was the Superior Court's establishment of a rule of judicial administration for the adjudication of a challenge based on a violation of a Rule of Judicial Conduct. In contrast, Prospect observes that no rule of judicial administration was created nor was a standard altered; instead, the Commonwealth Court applied rules already established under our Constitution and our common law. *Id.* at 29-30.

Prospect proceeds to argue that the Commonwealth Court's decision was correct as a matter of law and fact. Prospect maintains that Judge Braxton accepted an "office for profit" prohibited by Section 17(a) when he accepted the appointment to the Board. In support of its position, Prospect contends that this Court's decision in *De Turk v. Commonwealth*, 129 Pa. 151 (Pa. 1889) is "on point and controlling," and it discusses it

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 27

and *Commonwealth ex rel. Crow v. Smith*, 23 A.2d 440, 442 n.3 (Pa. 1942) in support of its position that the constitutional prohibition against holding incompatible offices is self-executing and that acceptance of a second office results in the vacation of the first.[10]  *Id.* at 40-42.  With respect to the facts, Prospect highlights that the evidence refutes the District's claim that this Court authorized Judge Braxton to hold incompatible offices and also argues that this type of constitutional violation could not be authorized by this Court. *Id.* at 44-45.

Prospect agrees with the Commonwealth Court that this case involves nonwaivable structural error and relies primarily on federal case law involving violation of the Appointments Clause.[11]  *Id.* at 49-59 (citing, inter alia, *Intercollegiate Broadcasting*

---

[10]  In response, the District argues that Article VI, Section 2 of our Constitution mandates that only the General Assembly can determine what constitutes "incompatible offices." District's Reply Brief at 3-4.  Further, the District maintains that the common law rule from *De Turk* relied upon by Prospect (i.e., that acceptance of a second office implies the resignation of the first) was abolished by virtue of amendments to our Constitution made in 1874.  *Id.* at 7.  This Court, it argues, made this clear in *Commonwealth ex. rel. Schermer v. Franek*, 166 A. 878 (Pa. 1933), and *Commonwealth ex. rel. Fox v. Swing*, 186 A.2d 24 (Pa. 1962).  District's Reply Brief 7-9.  Because Article VI, Section 2 vests the General Assembly with the power to declare incompatible offices and because it has not declared judicial officer and member of the Board incompatible, the District contends that they cannot be considered incompatible.  *Id.* at 10-11.

[11]  The Appointments Clause of the United States Constitution provides:

> [The President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior

(continued…)

*System, Inc. v. Copyright Royalty Board*, 796 F.3d 111, (D.C. Cir. 2021); *Nguyen v. United States*, 539 U.S. 69, 84-85 (2003)).  Prospect argues that ""[l]ike the Apportionment Clause, Article V, Section 17 … embodies concerns about the organization and qualification of government officials, and its violation constitutes structural error for the same reasons." *Id.* at 51.

## III.    Discussion

The question on appeal involves constitutional interpretation, which presents a pure question of law.  *Pa. State Educ. Ass'n v. Dep't of Cmty. and Econ. Dev.*, 148 A.3d 142, 162 n.5 (Pa. 2016).  As with any question of law, our standard of review is de novo and our scope of review is plenary.  *Id.*  When interpreting constitutional provisions, the polestar of our analysis must be the plain language of the provision.  *Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Servs.*, 309 A.3d 808, 849 (Pa. 2024) (citing *In re Bruno*, 101 A.3d 635, 659 (Pa. 2014)).

## A.    The Commonwealth Court's Authority to Review Trial Court Orders for Violation of Article V, Section 17

Article V of the Pennsylvania Constitution is dedicated to the Judiciary.  This appeal hinges on the effect of two sections of Article V and the ability of our intermediate appellate courts to review litigants' challenges to trial court orders based on a trial judge's violation of an Article V prohibition.  The implicated sections are 17 and 18.  This appeal

---

Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. CONST. art. II, § 2.

arises from the specific prohibition against judges[12] holding an office or position of profit while holding judicial office as set forth in Section 17(a).

Article V, Section 18 is titled "Suspension, Removal, Discipline and Other Activities." Section 18 establishes the Judicial Conduct Board, which is responsible for "receiv[ing] and investigat[ing] complaints regarding judicial conduct filed by individuals or initiated by the [Judicial Conduct Board] … to determine whether there is probable cause to file formal charges against … a judge … for conduct proscribed by this section and present a case in support of the charges before the Court of Judicial Discipline." PA. CONST. art. V, § 18(a)(7). Section 18 also establishes the Court of Judicial Discipline to preside over judicial disciplinary hearings and render decisions that can result in the imposition of discipline against judges found to have engaged in misconduct so long as the charges are supported by clear and convincing evidence. PA. CONST. art. V, § 18(b)(5). Ultimately, if a judge appeals an adverse decision, this Court makes the final determination as to the appropriate outcome of the disciplinary proceedings. PA. CONST. art. V, §§ 18(c)(1)-(3).

In addition to establishing the process for judicial discipline, Article V, Section 18 addresses the types of discipline that may be imposed by the Court of Judicial Discipline:

> (d) A justice, judge or justice of the peace shall be subject to disciplinary action pursuant to this section as follows:

---

[12] Section 17(a) is directed to "Justices and judges" and Section 18 contemplates the disciplinary process for a "justice, judge or justice of the peace." PA. CONST. art. V, §§ 17(a), 18(a)(7)-(9), (b)(5), (c)(1), (c)(4), (d)(1)-(5). Given the context of this appeal and certain variations for justices and justices of the peace, not relevant here, we refer only to judges.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 30

(1) A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for … violation of [S]ection 17 of this article; misconduct in office; neglect or failure to perform the duties of office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court … [.]

\* \* \*

(3) A justice, judge or justice of the peace convicted of misbehavior in office by a court, disbarred as a member of the bar of the Supreme Court or removed under this section shall forfeit automatically his judicial office and thereafter be ineligible for judicial office.

(4) A justice, judge or justice of the peace who files for nomination for or election to any public office other than a judicial office shall forfeit automatically his judicial office.

PA. CONST. art. V, §§ 18(d)(3)-(4).

In this appeal, the party aggrieved by orders entered in the tax assessment proceedings sought relief from those orders in the Commonwealth Court based on the trial judge's violation of Section 17(a). The Commonwealth Court determined that Section 17(a) was violated and that, as a result of the violation, Judge Braxton "forfeit[ed] his judicial office." *Prospect Crozer*, 283 A.3d at 443. The District argues that this was erroneous because only those entities set forth in Section 18 of our Charter are authorized to investigate, adjudicate and remedy a violation of Section 17.

There is nothing to suggest that Section 18 is the **only** mechanism to review and remedy an alleged violation of Section 17 or that judicial discipline is the only remedy. The District's position ignores the scope of the impact that judicial misconduct can have, and our jurisprudence demonstrates the fallacy of the District's position. For example, in

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 31

the infamous "kids-for-cash" scheme, former judges of the Luzerne County Court of Common Pleas had been receiving payments from two private for-profit juvenile facilities and transferred juveniles they adjudicated delinquent to those facilities. The judges were tried and convicted of felonies for participating in the criminal conspiracy, wherein they "profited by taking bribes, kickbacks, extortionate payments, and other types of payoffs, and then attempted, by way of a number of schemes to hide their illegal activities." *In re Ciavarella*, 108 A.3d 983, 983-84 (Pa. Ct.Jud.Disc. 2014).

In addition, this Court exercised its King's Bench powers to investigate the matter and provide relief to the affected juveniles by expungement of their juvenile records. *In Re: Expungement of Juvenile Records and Vacatur of Luzerne County Juvenile Court Consent Decrees or Adjudications from 2003-2008*, 81 MM 2008 (Pa. 2009) (per curiam). Two years later, complaints were filed with the Court of Judicial Discipline against both judges. They were formally charged with violations pursuant to Section 17(b) of our Charter, which prohibits "Justices and judges" from engaging in any activity prohibited by law. Important Notice, 7 JD 2011; Important Notice, 8 JD 2011; *see also* PA. CONST. art. V, § 17(b). As a result of their final convictions, the Court of Judicial Discipline found both judges had violated the Constitution and were subject to discipline under Article V, § 18(d)(1) of our Charter, resulting in their removal from office and their ineligibility to hold judicial office in the future. *In re Ciavarella*, 108 A.3d at 988; *In re Conahan*, 51 A.3d 922, 923 (Pa. Ct.Jud.Disc. 2012).

As illustrated, judicial misconduct can simultaneously affect society's broad interests, the rights of individual litigants and the transgressing jurists' entitlement to office. The judicial discipline system established in Article V of our Charter directly

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 32

addresses the impact of judicial misconduct on the offending judge's service in judicial office. While disciplining a judge who violates Section 17's proscriptions may also address societal interests regarding the integrity of the judicial system, Section 18's articulated purpose is to provide a mechanism to sanction offending judges.[13]

Multiple remedies to address the same conduct is not a novel concept. In the context of attorney misconduct, we have recognized that the same conduct can be subject to both civil liability and attorney disciplinary proceedings which serve entirely different purposes. *See Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1285 (Pa. 1992) (rejecting the Superior Court's reasoning that "conduct ceases to be a tort when it is at the same time a disciplinary violation") ("[M]isuse of a client's confidences can be actionable while also being an ethical violation."). While Braxton's conduct may result in judicial disciplinary action,[14] that is irrelevant to the question of what relief is available to Prospect in these tax assessment matters as a result of his violation of Section 17(a).

The Commonwealth Court has jurisdiction to review a civil appeal arising in a municipal tax assessment matter.[15] 42 Pa.C.S. § 762(a)(4)(i). Likewise, the Commonwealth Court has the authority to interpret and review constitutional provisions to determine the validity of governmental conduct. *See Stilp v. Commonwealth*, 905 A.2d 918, 948 (Pa. 2006) ("[T]he ultimate power and authority to interpret the Pennsylvania

---

[13] *See* supra note 7.

[14] We express no opinion on this issue.

[15] Neither the Judicial Conduct Board nor the Court of Judicial Discipline has appellate jurisdiction over an order of the Court of Common Pleas. *See* PA. CONST. art. V, §§ 18(a)(7)-(9), (b)(1)-(6); 42 Pa.C.S. §§ 1604, 2105.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 33

Constitution rests with the Judiciary[.]"); *see also Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch. Dist.*, 124 A.3d 363 (Pa. Commw. 2015), *reversed by Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch. Dist.*, 163 A.3d 962 (Pa. 2017); *Robinson Twp. v. Commonwealth*, 52 A.3d 463 (Pa. Commw. 2012), *affirmed in part, reversed in part by Robinson Twp. Commonwealth*, 83 A.3d 901 (Pa. 2013). Contrary to the District's position, the Commonwealth Court had the authority to decide the issue presented in this appeal.

## B.    Interpretation and Application of Article V, Section 17(a)

Our guiding principle for interpreting this constitutional provision, as it is with any constitutional provision, is the language of the Constitution itself. *League of Women Voters v. Commonwealth*, 178 A.3d 737, 802 (Pa. 2018). This language "must be interpreted in its popular sense, as understood by the people when they voted on its adoption." *Id.* (quoting *Ieropoli v. AC & S Corp.*, 842 A.2d 919, 925 (Pa. 2004)). Further, "we must favor a natural reading which avoids contradictions and difficulties in implementation, which completely conforms to the intent of the framers and which reflects the views of the ratifying voter." *Id.* (quoting *Commonwealth ex rel. Paulinski v. Isaac*, 397 A.2d 760, 766 (1979)).

Entitled "Prohibited activities," Section 17 provides, in relevant part, as follows:

> (a) Justices and judges shall devote full time to their judicial duties, and shall not engage in the practice of law, hold office in a political party or political organization, or hold an office or position of profit in the government of the United States, the Commonwealth or any municipal corporation or political subdivision thereof, except in the armed service of the United States or the Commonwealth.

PA. CONST. art. V, § 17(a).

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 34

## 1. Incompatible Offices

Section 17(a) imposes a broad directive that judges shall devote full time to their judicial duties, and it also specifically prohibits judges from simultaneously holding enumerated offices or positions. The District asserts that Section 17 "identifies **prohibited activities** by judicial officers, **not incompatible offices**." District's Reply Brief at 1 (emphasis added). By virtue of its title, Section 17, as a whole, prohibits judicial officers from engaging in certain activities. As relevant to these appeals, Section 17(a) prohibits judges from holding another government office or position of profit in the government. PA. CONST. art. V, § 17(a). Although Section 17(a) does not use the term "incompatible offices," the language obviously defines what offices and positions are incompatible with the office of judge.

The term "incompatible offices" is used explicitly in Article VI, Section 2 of our Charter:

**Incompatible offices.**

> No member of Congress from this State, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached. The General Assembly may by law declare what offices are incompatible.

PA. CONST. art. VI, § 2. We have also used the term "incompatible positions" and "incompatible offices" to describe the prohibition in Section 17(a), which we referred to as one of our Charter's "incompatibility provisions[.]" *Reed v. Sloan*, 381 A.2d 421, 424-25 (Pa. 1977).

We have explained the general public policy underlying constitutional prohibitions against a government official holding an incompatible office: "In good public service a

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 35

man cannot serve two masters or perform the duties of different offices … . It is manifest that absurdities and chaos might result if it were otherwise." *Commonwealth ex rel. Adams to Use of Lubic v. Holleran*, 39 A.2d 612, 614 (Pa. 1944). In addressing this concern with respect to the judiciary and Section 17(a), we have stated that "[t]he evil sought to be avoided by the incompatibility provisions is the improper performance of the duties of the office which might be inspired by the holding of an incompatible position." *Reed*, 381 A.2d at 424. Thus, Section 17(a)'s prohibition against holding an incompatible office prevents conflicts of duties. This is distinct from our Rules of Judicial Conduct that prohibit conflicts of interest where a judge's specific bias or prejudice is alleged to interfere with the proper adjudication of a particular case. *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998). Whereas conflicts of interest under the Rules of Judicial Conduct may not arise in all cases heard by a judge, the conflict of duties prohibited by Section 17(a) precludes the performance of any judicial duties.

### 2. Application of 17(a) to Senior Judges

Contrary to the suggestion of the District, the strictures of Section 17(a) apply to senior judges appointed by this Court. Pursuant to Article V, Section 16 of our Constitution, this Court can assign a former or retired judge to temporary judicial service pursuant to the rules prescribed by this Court. PA. CONST. art. V, § 16(c). Prior to assignment to judicial service, our Rules of Judicial Administration require certification of senior judges. To be eligible for senior certification, a jurist is required to meet specific criteria,[16] and once an application is approved by this Court, "senior status shall be subject

---

[16] Pa.R.J.A. 701(A)(1)(a)-(c).

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 36

to the pleasure of the Supreme Court."[17] Pa.R.J.A. 701(A)(7). Once a retired jurist has been certified to senior status, they may, by their consent, be assigned to judicial service. PA. CONST. art. V, § 16.

Upon recommendation of the Court Administrator, the Chief Justice may "by order, assign any retired, former or active magisterial district judge, judge or justice to temporary judicial service on any court to fulfill a request by a president judge, or to reduce case inventories, or to serve the interest of justice." Pa.R.J.A. 701(C)(2). Unless the order specifies otherwise, the order assigning the senior judge does not expire until that assignment is complete. Pa.R.J.A. 701(C)(3). Here, the president judge of Delaware County requested a temporary judicial assignment from this Court to oversee the tax assessment matters due to the full bench recusal of the judges in Delaware County. Request for Assignment of Judge, 6/30/2017. Judge Braxton was selected for the assignment by order of this Court on July 20, 2017, "vest[ing] [Judge Braxton] with the same power and authority as the judges of the requesting district[.]" Order, 7/20/2017.

In re Cain, 590 A.2d 291 (Pa. 1991) involved a senior judge who was convicted of "misbehavior in office by a court." Id. at 292. Under a former provision of our Constitution, a "justice, judge or justice of the peace convicted of misbehavior in office" was required to "forfeit automatically his judicial office and thereafter be ineligible for judicial office." Id. (citing PA. CONST. art. V, § 18(l), amended). The specific challenge raised in In re Cain was whether eligibility for "judicial office" encompasses the temporary judicial service as

_____

[17] Judge Braxton's application was submitted and accepted in 2010 with his status, unless revoked, remaining effective for a period of ten years. As part of his application, Judge Braxton indicated that he would "continue to comply with all relevant laws, rules and procedures as a Senior Judge[.]" Application for Senior Judge Status, ¶ 1, 2/23/2010.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 37

a senior judge for purposes of the former constitutional provision. *Id.* We explained that "[i]t cannot be said that a retired judge serving under an assignment by this Court for temporary judicial service is not performing the services of a judicial office[.]" *Id.* A senior judge is assigned to perform judicial duties with the same authority as other judges in the District to which he is assigned. The conflict of duties prevented by Section 17(a) is equally applicable to senior judges because the duties of the judicial office are the same regardless of status.

Section 17(a) generally requires that judges "shall devote **full time** to their judicial duties." PA. CONST. art. V, § 17(a) (emphasis added). A senior judge's temporary assignment to a specific court does not alter the application of the requirement. The request for certification as a senior judge and acceptance of assignment of judicial duties requires full time devotion to those duties.

For these reasons, as a senior judge assigned to these tax assessment matters, Judge Braxton was subject to the requirement and prohibitions set forth in Section 17(a). Therefore, the prohibition against holding an incompatible office applied to him.

### 3. Office or Position of Profit in Government

Section 17(a) prohibits a judge from holding an office or position of profit in the government of the United States, the Commonwealth or any municipal corporation[18] or

---

[18] The rules of Statutory Construction define "Municipal Corporation" as follows:

> **"Municipal corporation."**
>
> (1) When used in any statute finally enacted on or before December 31, 1974, a city, borough or incorporated town.

(continued…)

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 38

political subdivision[19] thereof[.]"  PA. CONST. art. V, § 17(a).  "[O]ffice" is separated from "position of profit" by the conjunction "or" to indicate an alternative.  We need not engage in interpretation to determine whether the descriptive phrase "of profit" modifies "office" so that a prohibited office must be one of profit.  In its application to vacate, Prospect alleged that Judge Braxton held a "position of profit," Prospect's Application to Vacate at 13; *Prospect Crozer*, 283 A.3d at 437, so we focus on that phrase.

In 1870, we reasoned that the mere fact that "a salary is attached" to a specific position is sufficient to demonstrate that it is one of profit.  *Conyngham*, 65 Pa. at 83-84.[20] Consequently, a government position to which a salary attaches is a prohibited one.

---

(2) When used in any statute finally enacted on or after January 1, 1975, a city, borough, incorporated town or township.

1 Pa.C.S. § 1991.

[19]  The rules of Statutory Construction define "Political subdivision" as follows:

**"Political subdivision."** Any county, city, borough, incorporated town, township, school district, vocational school district and county institution district.

1 Pa.C.S. § 1991.

[20]  The *Conyngham* Court's interpretation came about in reference to an 1850 amendment to our 1838 Constitution, which provided, in relevant part:

The judges of the Supreme Court, and the presidents of the several courts of Common Pleas … shall receive no fees or perquisites of office, nor hold any other office of profit under this Commonwealth.

PA. CONST. art. V, § 2 (1850).  While we resolved the matter in *Conyngham* on separate grounds, arguably rendering this statement dicta, this understanding of "office of profit" is reasonable and informs our understanding of "position of profit," as it is used in Section 17(a).

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 39

## 4. Application of Section 17(a)

As determined by the Commonwealth Court, Senior Judge Braxton decided the tax appeals in this matter while he also served on the Board. There is no record that this Court, the Chief Justice, or any other Justice approved of the dual service. Nor could there be since this Court lacks the authority to override a constitutional requirement. The Commonwealth Court found that Judge Braxton's membership on the Board began by June 16, 2019, when he received his first pay from the Board. As such, he began his membership on the Board prior to his issuance of the thirty-four orders in this matter in October 2019.

Judge Braxton's service on the Board qualified as a position of profit with a municipal corporation or political subdivision. As discussed, the mere fact that "a salary is attached" to a specific position is sufficient to demonstrate that the position is one of profit. *Conyngham*, 65 Pa. at 83-84. As a member of the Board, Judge Braxton receives an annual salary of $70,000. PHILA. CODE § 20-304(7) (2021). Thus, it is a position of profit. As for the Board, it was created by statute to preside over property assessment appeals in Philadelphia. *Bd. of Revision of Taxes, v. City of Phila.*, 4 A.3d 610, 615 (Pa. 2010). Philadelphia is a city,[21] and a city fits the definition of either a "municipal

---

[21] William Penn created Philadelphia County in 1682 along with Bucks County and Chester County as the three original counties of Pennsylvania. WAYLAND FULLER DUNAWAY, A HISTORY OF PENNSYLVANIA 30-31 (2d ed. 1961). Through the Philadelphia Consolidation Act of 1854, the City of Philadelphia's boundaries were "extended so as to embrace the whole of the territory of the County of Philadelphia, and all the powers of [the City] … shall be exercised and have effect within the said county and over the inhabitants thereof." 53 P.S. § 16251, Act of Feb. 2, 1854, P.L. 21, § 1. In 1951, Pennsylvania adopted the City-County Consolidation Amendment to the Constitution which established, in pertinent part, that "[i]n Philadelphia all county offices are hereby abolished, and the city shall henceforth perform all functions of county government within (continued…)

corporation" or "political subdivision."  *See* supra notes 18 & 19.  Because the Board is a statutory creature of a city government, a member of the Board clearly has a position with a municipal corporation or political subdivision.  Accordingly, Judge Braxton's role as a member of the Board is a position of profit with a municipal corporation or political subdivision.

Pursuant to the facts of this case and the plain language of Section 17(a), Judge Braxton accepted a position of profit with a municipal corporation or political subdivision in violation of Section 17(a)'s express prohibition against such activity.  The question then becomes what effect the violation has on the instant proceeding.

## C.      Remedy for Violation of Section 17(a)

For the reasons discussed, we agree with the Commonwealth Court that Judge Braxton violated Section 17(a) by simultaneously serving as a judge presiding over the tax appeal cases in the Delaware County Court of Common Pleas and as a member of the Board in Philadelphia.  However, we reject the intermediate appellate court's analysis of the consequences of the violation for the purpose of determining the appropriate remedy for a litigant challenging an adjudication by a judge operating under a constitutionally prohibited conflict of duties.

The Commonwealth Court opined that the "applicable rule, which is generally held in all American jurisdictions, holds that where a single person holds two incompatible offices, the acceptance of the second ipso facto vacates the first." *Prospect Crozer*, 283

---

its area through officers selected in such manner as may be provided by law." PA. CONST. art. IX, § 13(a).  Thus, the City of Philadelphia is coterminous with Philadelphia County and performs all functions of the county government.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 41

A.3d at 443 (citations omitted). Based on this principle, the court concluded that a judge that violates Section 17(a) of the Pennsylvania Constitution forfeits his judicial office. *Id*.

There are multiple problems with the Commonwealth Court's analysis and conclusion. First, this Court has never adopted the common law rule that the acceptance of a second office vacates the first office by operation of law.[22] The second problem flows from the first: which office yields is not an issue in a challenge to the trial court's adjudication in this case. The constitutional impediment is that the trial judge, under such circumstances, is laboring under a conflict of duties that irretrievably infects the adjudication. The cases considered by this Court involving incompatible offices involve challenges to a person's eligibility to hold an office based on concurrent service in incompatible positions. The challenged office holder is always a party to the challenge proceeding. The relief sought in those proceedings is the ouster of the office holder from office or a declaration of a vacancy of office. The adjudications in these tax appeals are at issue here, not ousting the judge from judicial office.

In this civil tax appeal, the only relevant issue presented was the effect of the Section 17(a) violation on the orders entered in the trial court. While the Commonwealth Court implicitly recognized that it could not remove Judge Braxton from office, *Prospect Crozer*, 283 A.3d at 443, it did not grapple with the fact that the case law it erroneously interpreted and relied on derived from formal ouster proceedings against the challenged office holder. There is nothing "automatic" about an ouster from office. The Commonwealth Court's use of the fiction that Judge Braxton's acceptance of an incompatible office automatically results in his forfeiture of his judicial office was error.

---

[22] We refer to this common law rule as the "de facto resignation rule."

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 42

### 1. De Facto Resignation Rule

Although the Commonwealth Court held that Judge Braxton automatically "forfeited his judicial office"[23] as a result of accepting a position on the Board, our case law does not support such a determination. Our jurisprudence, with respect to incompatible judicial offices, has never addressed remedies for litigants affected by dual office holders and, in the context of challenges to an office holder's entitlement to office, this Court has not adopted the de facto resignation rule.

At common law, offices were not designated as expressly incompatible pursuant to a constitutional or statutory provision, but rather the nature of the duties rendered it improper for one person to hold both offices. *Russell v. Worcester Cnty*., 84 N.E.2d 123, 124 (Mass. 1949). If the duties of offices were in conflict, such as "[w]here the holder of one office is superior to the holder of the other, or has discretionary power to review the action of the holder of the other, the offices are incompatible." *Id.* From this conflict, a

---

[23] The Commonwealth Court and the parties discuss the effect of Braxton's incompatibility in terms of automatic "forfeiture," but this terminology is inapt as that terminology comes from Section 18 and not the line of cases upon which their respective analyses rely. *Prospect Crozer*, 283 A.3d at 443 ("A judge that violates Article V, Section 17(a) of the Pennsylvania Constitution **forfeits** his judicial office.") (emphasis added); District's Brief at 24-25 (arguing that the Commonwealth Court determined that Judge Braxton automatically forfeited his position without adhering to the Article V, Section 18 procedures); Prospect's Brief at 39 (asserting that a "public official's acceptance of an incompatible office results in **automatic forfeiture** of the first position") (emphasis added). Section 18 contemplates "automatic forfeiture" as a consequence for specifically enumerated misconduct in the context of judicial discipline. PA. CONST. art V, §§ 18(d)(3)-(4). As we have previously discussed at length, the focus and scope of the remedy at issue in these appeals and the types of discipline prescribed in Article V, Section 18 are separate and distinct.

As will be discussed, the rule relied on by the Commonwealth Court, as adopted in other jurisdictions, is more precisely a "de facto resignation rule" and we will refer to it as such.

rule developed that "where a single person holds two incompatible offices, the acceptance of the second ipso facto vacates the first." *Fauci v. Lee*, 237 N.Y.S.2d 469 (N.Y. Sup. Ct. 1963); *see also De Turk,* 129 Pa. 151 (discussing but not adopting the de facto resignation rule as "an acceptance of the second office was an implied resignation and vacation of the first"). Many states with constitutional and statutory provisions prohibiting incompatible offices apply the de facto resignation rule to address claims of incompatible offices. *See, e.g.*, *Fauci v. Lee*, 237 N.Y.S.2d 469 (N.Y. Sup. Ct. 1963) (statutory claim seeking a court order directing that petitioner's name be certified as "police justice" as of a certain date); *Opinion of the Justices*, 647 A.2d 1104, 1105 (Del. 1994) (request from executive branch for an opinion in writing from Supreme Court of Delaware whether appointment was in violation of the state constitution); *Stubbs v. Lee*, 64 Me. 195, 198 (1874) (challenge to judicial authority of a "trial justice" to preside over and sentence a criminal defendant after "trial justice" had accepted commission as a deputy-sheriff); *Scott v. Strobach*, 49 Ala. 477, 485 (1873) (challenge sounding in quo warranto regarding state legislator's eligibility for office of sheriff). While this Court has acknowledged the rule's existence, we have never applied it.

This Court has addressed matters concerning legally incompatible offices for more than two centuries. While we have recognized the prevalence of the de facto resignation rule in other states, we have avoided adopting the rule in Pennsylvania. In addressing incompatible office challenges, we have remained consistent on several points. Whether offices or positions are incompatible is a matter of public policy, which is determined by

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 44

our Constitution and the statutes passed by the General Assembly.[24]  In the absence of constitutional or statutory directive, this Court does not have the authority to determine what offices or positions are incompatible.[25]  If the Constitution or a statute makes certain offices or positions incompatible, the individual holding those positions must elect one of those positions to hold when their ability to hold both offices is properly challenged.[26]  Once challenged, if the individual holding those positions refuses or neglects to make

---

[24]  *See Shepherd v. Commonwealth*, 1 Serg. & Rawle 1, at 5 (Pa. 1814) (finding that whether an office is incompatible is a "question [that] must be decided by the Constitution of Pennsylvania and the acts passed under it, and not by cases under the common law of England"); *Commonwealth v Pyle*, 18 Pa. 519, 521 (Pa. 1852) (finding that it is "the constitution or a statute [that] declares that certain disqualifications shall render a person ineligible to an office[,]" including incompatibility of office); *Commonwealth ex rel. Schermer v. Franek*, 166 A. 878, 880 (Pa. 1933) ("[T]he Constitution has provided a method of declaring what offices are incompatible, thereby announcing the public policy of this state in regard thereto[.]"); *Commonwealth ex rel. Adams to Use of Lubic v. Holleran*, 39 A.2d 612, 613-14 (Pa. 1944) ("It was the intention of the makers of the Constitution to promote, as far as possible, a sound public policy … [including the requirement] that an elected or appointed officer be confined to the performance of the duties of his office, and prevented from leaving it without resigning to take office or employment elsewhere.").

[25]  *See Schermer*, 166 A. at 880 ("Inasmuch as the Constitution has provided a method of declaring what offices are incompatible … the courts are not permitted to hold offices incompatible merely because the Legislature has failed to act[.]"); *Commonwealth ex. Rel. Fox v. Swing*, 186 A.2d 24, 25 (Pa. 1962) (finding that Article XII, Section 2 "completely abrogated" the ability of courts to invoke common law principles to declare offices incompatible).

[26]  *See De Turk*, 18 A. at 758 (observing that De Turk's resignation from the second office "before issue was joined" rendered judgment of ouster improper); *Commonwealth ex rel. v. Haeseler*, 28 A. 1014, 1015 (Pa. 1894) ("The appointment [to a second incompatible office] was not void, but when it was made it became the duty of [Haeseler] to determine which place he would resign. He had the right to hold either, but not both."); *Snyder*, 144 A. at 749 (holding that if "the incompatibility … arises solely by reason of the fact that the duties of the two offices are such that it would be against public policy to permit one person to hold both of them, then the incumbent may elect which he will retain").

such a choice, this Court must examine the constitutional or statutory directives and determine which of the offices or positions must be relinquished.[27] Should the individual be prohibited from resigning from one of the positions at issue, this Court will recognize that they have automatically forfeited the position from which they can lawfully resign.[28] Consequently, the Commonwealth Court's reliance on the de facto resignation rule to resolve these appeals was in error. Contrary to its and the parties' assertion, the rule has not been adopted by this Court.

Moreover, a determination of ouster never occurs without affording due process to the challenged office holder. Nearly every case where we have addressed incompatibility

---

[27] *See Haeseler*, 28 A. at 1015 (explaining that "upon neglect or refusal" of Haeseler to elect which office he would retain, judgment of ouster would be entered in accordance with the statutory mandate that he not be appointed school treasurer while already holding the office of school director); *Commonwealth ex rel. Sherwood v. Bennett*, 82 A. 249, 250 (Pa. 1912) (after Bennett refused to resign from one of the incompatible offices, reasoning that the law declared "which … forfeiture is the true superior" between the two offices for purposes of entering a judgment of ouster).

[28] *See Commonwealth ex rel. Crow v. Smith*, 23 A.2d 440, 442 n.3 (Pa. 1942) ("Ordinarily, one holding two incompatible offices is allowed to elect which he desires to resign; if he declines or neglects to make a choice the court determines which office he should be compelled to relinquish … [However,] it is not within [Crow's] power … to resign from his office in the army."); *Holleran*, 39 A.2d at 614 (finding that because there was "no choice as to the continuance" of his military duties, the "civil office must be declared vacant, as of the time of his induction").

Although this limited exception to our general rule operates like the de facto resignation rule, the occasions for which it can apply are few. Given our constitutional amendments that exempt military service from the incompatible office prohibition, the facts presented in *Crow* and *Holleran* may never arise if applied to a jurist. *See* PA. CONST. art. V, § 17(a) (providing an exception for those "in the armed service of the United States or the Commonwealth").

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 46

and resignation from an office or position arose in an action in quo warranto.[29]  *See, e.g.*, *Pyle*, 18 Pa. 519; *Conyngham*, 65 Pa. 76; *De Turk*, 18 A. 757; *Haeseler*, 28 A. 1014; *Bennett*, 82 A. 249; *Snyder*, 144 A. 748; *Schermer*, 166 A. 878; *Crow*, 23 A.2d 440; *Holleran*, 39 A.2d 612; *Fox*, 186 A.2d 24.

Quo warranto is a challenge to the title or the right to hold a public office. *Commonwealth ex rel. Jud. Conduct Bd.*, 918 A.2d 87 (Pa. 2007).  "A quo warranto is addressed to prevent[] [sic] a continued exercise of authority unlawfully asserted, rather than to correct what has already been done under the authority."  *Spykerman v. Levy*, 421 A.2d 641, 649 (Pa. 1980).  Ultimately, the intention of initiating such an action is to oust a public officer.  *Schermer*, 166 A. at 879.  We have observed that historically "it was a criminal proceeding on information and resulted in the imposition of fines and sentences of imprisonment."  *Id.*  While quo warranto actions no longer possess these same characteristics from criminal proceedings, the action is still "brought in the name of the [C]ommonwealth to redress a public wrong, is prosecuted in the name of the [C]ommonwealth's attorney and by his leave[.]"  *Id.*  If the Commonwealth is successful, the result is the ouster of "the usurper from the office which he unlawfully holds."  *Id.*[30]

---

[29]  There may be limited circumstances in which an action in the nature of mandamus is the proper course.  *See, e.g., Snyder*, 144 A. 748.

[30]  One of the only non quo warranto cases where a challenge was raised on the basis of incompatibility was a habeas corpus proceeding.  *Commonwealth v. Sheriff & Keeper of Jail of Northumberland Cnty.*, 4 Serg. & Rawle 275 (Pa. 1818).  Similar to the instant matter, the party in *Sheriff & Keeper of Jail* was not attempting to merely oust the judge from his office, but rather claimed that by accepting an incompatible office, the judge vacated his office, making "the proceedings … coram non judice" and rendering his orders void.  *Id.* at 275.  Because we found that the offices at issue were compatible, we ultimately "waive[d]" the question about whether the nature of the proceeding had an impact on the scope of our decision; however, we noted our concern as to "whether the (continued…)

In this civil tax appeal case, the Commonwealth Court accepted Prospect's argument that by engaging in incompatible activities, Judge Braxton automatically resigned from his judicial office pursuant to the de facto resignation rule, and thus by adjudicating the tax assessment proceedings without the authority to do so, the orders he entered are void. Prospect's Brief at 43-44. In its effort to fashion a remedy for the private litigant in these appeals, the Commonwealth Court relied on a non-existent legal principle that the acceptance of an incompatible office results in the automatic resignation of the first-held position. In Pennsylvania, violations of incompatible office prohibitions do not result in the automatic ouster from either office, and no forced resignation or ouster can be recognized without the challenged officer being a party to the proceeding challenging the office holder's ability to hold an office.[31] Moreover, the purpose of challenging a person's ability to hold an office is to prevent the "continued exercise of authority unlawfully asserted," not "to correct what has already been done under the authority." *Spykerman*, 421 A.2d at 649.

### 2. Remedy for Conflict of Duties

Section 17(a)'s purpose is to preempt a conflict between judicial duties and duties arising from another office or position of profit in the government. This prohibition against conflicting duties is a public policy critical to maintaining confidence in the judiciary. A

---

[C]ourt, where the person claiming to hold office and actually exercising it is not before the [C]ourt, can decide on his right." *Id.* at 276. If the judge at issue had been a party in *Sheriff & Keeper of Jail*, we noted that the case would have followed "[t]he natural course … by information filed, calling on him to show cause why he claimed to hold the office[.]" *Id.*

[31] We also note that judicial discipline in the nature of a removal from office or forfeiture of office for a violation of Section 17(a) is separate and distinct from quo warranto actions seeking ouster from judicial office. *See* PA. CONST. art. V, § 18(d)(1), (3)-(4).

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 48

jurist "cannot serve two masters or perform the duties of different offices … . It is manifest that absurdities and chaos might result if it were otherwise." *Holleran*, 39 A.2d at 614. The prohibition against conflict of duties is viewed as critical to the proper functioning of the judicial branch of government as evidenced by its enshrinement in our Charter. Thus, we conclude that when a judge assumes an office or position of profit in government, she is presumed to be incapable of performing her judicial duties. This is a constitutional impediment to performing judicial duties and distinct from and in contrast to conflicts of interest that may arise as a result of individual biases or prejudices in specific cases.[32]

In cases where parties seek to recuse or disqualify a jurist from hearing their case due to a conflict of interest, the motion is "directed to and decided by the jurist whose impartiality is questioned." *League of Women Voters v. Commonwealth*, 179 A.3d 1080, 1083 (Pa. 2018) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 370 (Pa. 1995)). We have explained the applicable standard of review for a motion seeking a jurist's disqualification[33] as follows:

> In disposing of a recusal request, a jurist must first make a conscientious determination of his or her ability to assess the case before the court in an impartial manner, free of personal bias or interest in the outcome. "This is a personal and unreviewable decision that only the jurist can make." *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757, 764

---

[32] Generally, these latter types of conflicts of interest involve a jurist's alleged bias, prejudice, or some other type of unfairness stemming from a jurist's personal connection to the proceeding. *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998); *see also* Pa.C.J.C. 2.11 ("Disqualification").

[33] While the terms "disqualification" and "recusal" are distinct terms, they are often used interchangeably when discussing the principles underlying judicial disqualification. *See, e.g.*, *League of Women Voters*, 179 A.3d at 1083 (discussing the same action to be taken by a jurist in terms of both "recusal" and "disqualify[ing]" oneself from a case).

(1989). Once satisfied with that self-examination, the jurist must then consider whether or not continued involvement in the case would tend to undermine public confidence in the judiciary. *Id.* In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent. Once the decision is made, it is final.... *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291, 1300 (1985).

*Id.* (citing *Travaglia*, 661 A.2d at 370). The "only written directive that arises in the recusal context comes by way of reference to Rule 2.11 of the Code of Judicial Conduct, which has been employed to inform the recusal standard." *Lomas v. Kravitz*, 170 A.3d 380, 394 (Pa. 2017) (Saylor, C.J., dissenting) (citing *Goodheart*, 565 A.2d at 763). Unlike the types of conflicts contemplated by Rule 2.11, Section 17(a) sets forth a clear prohibition that a jurist either does or does not violate. Requests for disqualification for conflicts of interest are considered pursuant to the guidelines set forth in the Code of Judicial Conduct ("Code"), and we recognize this as a "personal and unreviewable decision that only the jurist can make." *League of Women Voters*, 179 A.3d at 1083. In contrast, a conflict of duties, as contemplated by Section 17(a), is binary and impersonal. A conflict of duties does not concern a jurist's relationship to a specific case and whether there might be a conflict of interest that could impact **that** case. Instead, the conflict of duties exists if the violation has occurred, and the conflict extends to **any** case that comes before the judge. A constitutionally proscribed conflict of duties invariably calls into question the public's confidence in the judicial system and the judge's ability to perform the duties of his judicial office regardless of the matter.

A violation of Section 17(a) is a conflict of judicial duties which cannot be overcome while the simultaneous service is occurring. When a challenge is properly raised and the facts establishing the incompatible position are proven, the result must be the per se

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 50

disqualification of the jurist from a case. We acknowledge that we have rejected per se disqualifications based on violations of the Code of Judicial Conduct. *See, e.g.*, *Commonwealth v. Druce*, 848 A.2d 104 (Pa. 2004). For instance, in *Druce*, this Court addressed whether a trial judge who violated the Code[34] by giving a statement to the press that implicated the question at issue in the case before him should be obligated to recuse from that case as a matter of law. *Id.* We rejected the per se standard because it would "remove any introspective discretion from the jurist … [and] would defeat the spirit of our judicial processes and undermine the legitimacy of our judges." *Id.* at 109. We wanted to "reserve faith, and give due deference to our jurists," by allowing them to address challenges to their partiality in hearing cases. *Id.* In *Druce*, the basis for the per se violation was the Code, which "does not have the force of substantive law." *Reilly*, 489 A.2d at 1298. The Code is intended to "impose[] standards of conduct upon the judiciary to be referred to by a judge in his self-assessment of whether he should volunteer to recuse from a matter pending before him." *Druce*, 848 A.2d at 109. The Code establishes norms pursuant to which judges are expected to conduct themselves, but it does not impose substantive legal duties on them. *Id.*

Our Constitution has the force of substantive law and does not merely set guidelines pursuant to which a jurist can engage in a self-assessment. It is the authority by which we are seated and robed, and it establishes the framework within which we must operate. By its express terms, Section 17(a) is either violated or it is not. There is no room for a judge's introspective consideration regarding whether the Constitution was

---

[34] Specifically, the judge had violated then Canon 3A(6), which provided, in relevant part: "A judge should abstain from public comment about a pending proceeding...[.]" Pa.C.J.C. 3A(6), *replaced by* Pa.C.J.C. 2.10(a).

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 51

violated. Any motion seeking relief from a Section 17(a) violation cannot be directed to the allegedly offending judge.

While it is clear that the challenged judge cannot decide whether a Section 17(a) violation has occurred and its consequences, this appeal is not an appropriate vehicle to develop a generally appropriate procedure for trial courts to follow in considering and deciding motions to disqualify a judge for a violation of Section 17(a) or motions to vacate orders entered while a judge is in violation of Section 17(a). Here, the offending judge no longer held judicial office and the challenge to the final orders was made after an appeal was filed. The Commonwealth Court acted reasonably by remanding to the trial court for a hearing to determine the facts surrounding the alleged violation and the due diligence of the party challenging the orders entered.

It cannot be overemphasized that what occurred in this case is a unique transgression by a judge in this Commonwealth. While Section 17(a) is relatively young, for at least 200 years, there have been prohibitions against judges contemporaneously holding a government position of profit. This is only the second reported case where an adjudication has been challenged on the basis that while the judge was performing his judicial duty, he was holding an incompatible office. [35] Our refusal to further expound on a proper procedure to raise a challenge of this nature is because we cannot predict the circumstances. It is enough to say that in the event the issue repeats, a litigant seeking to disqualify a judge from further involvement in a case or to vacate orders has recourse

---

[35] *Sheriff & Keeper of Jail*, 4 Serg. & Rawle 275 (Pa. 1818). In *Sheriff & Keeper of Jail*, the offices were found not to be incompatible. *See* supra note 30.

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 52

to the administrative judge of the appropriate division or the president judge of the court to address a motion in the first instance.

Any conflict of duties arising under Section 17(a) creates a constitutional impediment to continuing to perform judicial duties, and any judicial action taken while under the impediment is voidable. The party challenging a judicial action burdened by a conflict of duties need not establish prejudice. A constitutional violation of this nature damages the public's confidence in the administration of justice. The conflict of duties is presumptively prejudicial.

We have previously found that "the appearance of impropriety is sufficient justification for the grant of new proceedings before another judge." *In interest of McFall*, 617 A.2d at 712. By its very nature, a conflict of duties is an actual impropriety. To enforce the public policy driving Section 17(a)'s prohibition and to remedy the presumed prejudice arising from the conflict of duties here, the orders entered must be vacated and the cases remanded for reassignment.

However, the Commonwealth Court erred in its conclusion that the application to vacate the orders in this case was not subject to waiver rules. This notion was tied to its erroneous conclusion that because of an automatic forfeiture rule, Braxton was no longer a judge and was without authority to enter the orders on the tax appeal case. Thus, according to the intermediate appellate court, the adjudication under the circumstances amounted to non-waivable structural error. *Prospect Crozer*, 283 A.3d at 443. Because the first premise of the analysis was erroneous, the secondary conclusions also fail.

Prospect raised a challenge to Judge Braxton's orders based on the premise that he acted in violation of the Constitution. Constitutional challenges are waivable. *See,*

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 53

*e.g.*, *Coulter v. Ramsden*, 94 A.3d 1080, 1089 (Pa. Super. 2014) ("[E]ven issues of constitutional dimension cannot be raised for the first time on appeal."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the time on appeal."). Prospect's Section 17(a) challenge was likewise waivable. Consistent with our jurisprudence involving motions for recusal and disqualification based on violations of the Code of Judicial Conduct, we conclude that a party seeking relief from a violation of Section 17(a) must do so "at the earliest possible moment." *Lomas*, 170 A.3d at 390. The reasons for this rule are clear and remain salient in the context of a constitutional challenge. A delayed motion wastes judicial time and resources and the time and resources of the parties. Further, although the prejudice is presumed where judicial action is taken under a conflict of duties, that impropriety does not provide a free pass for gamesmanship. For example, if a party knows or with reasonable diligence should know of the Section 17(a) violation, the party cannot wait to file a disqualification motion until the outcome of the case is known. The District argues that this is precisely what occurred here—Prospect knew that Judge Braxton accepted a position with the Board on June 24, 2019, but waited eight months to file its application to vacate, after the orders against its position were entered. The Commonwealth Court rejected this argument finding instead, based on the evidence, that Prospect exercised due diligence in filing its application to vacate, and we are bound by that determination. *See* supra p. 20.

We are likewise bound by the mixed finding of fact and law that Judge Braxton's conflict of duties arose on June 16, 2019, when he was first compensated for this position on the Board. *Prospect Crozer*, 283 A.3d at 447. Prospect does not formalize an

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 54

argument that the conflict of duties under Section 17(a) arose when Judge Braxton accepted the position with the Board and thus, we do not consider the possibility.

Moreover, Prospect does not argue that a new trial is warranted even though, arguably, evidentiary proceedings took place after June 16, 2019. We therefore accept the Commonwealth Court's remedy to vacate the orders and the remand instructions that a new judge will decide the tax appeal case based on the record developed before Judge Braxton with the proviso that the new judge may supplement but not supplant the existing record. *Prospect Crozer*, 283 A.3d at 449-50.

## IV.     Conclusion

Article V, Section 17(a) of our Charter prohibits judges, including senior judges appointed and assigned to duties by this Court, from laboring under conflicts of duties. It prevents such conflicts by prohibiting a judge from holding a position of profit in the government, including the government of a political subdivision or municipal corporation of the Commonwealth. Judge Braxton accepted a compensated position with the Philadelphia Board of Revision of Taxes while serving as a senior judge assigned to Delaware County Court of Common Pleas. By doing so, he violated Section 17(a), and the Commonwealth Court had the authority to decide whether a violation occurred and to provide a remedy to Prospect who challenged the orders entered by Judge Braxton while operating under the conflict of duties created by the incompatible offices.

When a violation of Section 17(a) is raised by a timely filed motion and established, the result is a per se disqualification of the judge. Section 17(a) creates a constitutional impediment to the continued performance of judicial duties and prejudice is presumed. The conflict of duties is itself the harm that must be remedied. Judicial action taken while

[J-7A-2024, J-7B-2024, J-7C-2024, J-7D-2024, J-7E-2024, J-7F-2024, J-7G-2024, J-7H-2024, J-7I-2024, J-7J-2024, J-7K-2024, J-7L-2024, J-7M-2024, J-7N-2024, J-7O-2024, J-7P-2024, J-7Q-2024, J-7R-2024, J-7S-2024, J-7T-2024, J-7U-2024, J-7V-2024, J-7W-2024, J-7X-2024, J-7Y-2024, J-7Z-2024, J-7AA-2024, J-7AB-2024, J-7AC-2024, J-7AD-2024, J-7AE-2024, J-7AF-2024, J-7AG-2024 and J-7AH-2024] - 55

a judge is in violation of Section 17(a) is voidable.  As found by the lower courts, Prospect exercised due diligence in filing its application to vacate Judge Braxton's orders in these tax appeal cases.  The orders are vacated.  The case is remanded to the Court of Common Pleas of Delaware County for the president judge to reassign the tax appeal cases.  The newly assigned judge will render a decision based on the developed record. The newly assigned judge has the discretion to supplement the record but not supplant it.

We affirm the decision of the Commonwealth Court on other grounds.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.

Justice Mundy files a concurring opinion.